Dale Cendali (SB# 1969070)
dale.cendali@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Tel.: (212) 446-4800
Fax: (212) 446-4900

Allison Buchner (SB# 253102)
allison.buchner@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Tel.: (310) 552-4302
Fax: (213) 680-8500

Lauren J. Schweitzer (SB# 301654)
lauren.schweitzer@kirkland.com
KIRKLAND & ELLIS LLP
555 South Flower Street
Los Angeles, CA 90071
Tel.: (213) 680-8252
Fax: (213) 680-8500

Rachael A. Rezabek (SB# 298711)
rachael.rezabek@kirkland.com
KIRKLAND & ELLIS LLP
4550 Travis Street
Dallas, TX 75205
Tel.: (214) 972-1674
Fax: (214) 972-1771

*Attorneys for Defendant and Non-Party Beige Key LLC.*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| IN THE MATTER OF A DEPOSITION SUBPOENA SERVED IN:<br><br>METAx LLC,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>META PLATFORMS, INC.<br><br>　　　　　Defendant. | CASE NO. 24-MC-80221<br><br>[RELATED TO CASE NO 22-CV-06125 PENDING IN THE SOUTHERN DISTRICT OF NEW YORK]<br><br>**NON-PARTY BEIGE KEY LLC'S NOTICE OF MOTION AND MOTION TO QUASH DEPOSITION SUBPOENA OR FOR PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Hearing Date:<br>Time:<br>Courtroom: |

**TABLE OF CONTENTS**

Page

I. INTRODUCTION ................................................................................................................2

II. BACKGROUND ..................................................................................................................3

    A. The SDNY Litigation ...............................................................................................3

    B. Beige Key LLC and the Beige Key Subpoena .........................................................4

    C. MetaX Requested the Same Information from Meta Platforms...............................5

III. THE BEIGE KEY SUBPOENA SHOULD BE QUASHED ...............................................8

    A. The Beige Key Subpoena Is An Improper Attempt to Circumvent Party Discovery and Judge Stanton's Orders. .....................................................................9

    B. The Beige Key Subpoena Should Be Quashed Because It Seeks Beige Key's Highly Sensitive and Irrelevant Trademark Acquisition Agreements with Unrelated Parties ......................................................................................................10

    C. The Beige Key Subpoena Should Be Quashed Because It Seeks Information That Is Equally Obtainable from Party Discovery ..................................................13

IV. CONCLUSION ..................................................................................................................14

**Page(s)**

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AF Holdings, L.L.C. v. Does 1-1058*,
  752 F.3d 990 (D.C. Cir. 2014)......................................................................................................14

*Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*,
  300 F.R.D. 406 (C.D. Cal. 2014)....................................................................................................9

*Angioscore, Inc. v. Trireme Med., Inc.*,
  No. 12 Civ. 3393, 2014 WL 6706898 (N.D. Cal. Nov. 25, 2014)..................................................8

*Apollo Theater Found., Inc. v. W. Int'l Syndication*,
  No. 02 Civ. 10037, 2005 WL 1041141 (S.D.N.Y. May 5, 2005)..................................................11

*Audio MPEG, Inc. v. HP Inc.*,
  No. 16 Misc. 80271, 2017 WL 950847 (N.D. Cal. March 10, 2017)..............................................9

*Bigfoot 4x4, Inc. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, & Unincorporated Assocs.*,
  No. 22 Civ. 6758, 2024 WL 3161626 (N.D. Ill. June 25, 2024) ............................................11, 12

*Carroll v. Wells Fargo & Co.*,
  No. 15 Civ. 2321, 2017 WL 1316548 (ND. Cal. April 10, 2017) ..............................................8, 9

*DaVita, Inc. v. Scot Indus., Inc.*,
  No. 17 Civ. 480, 2018 WL 11443618 (E.D. Tex. Dec. 3, 2018)...................................................14

*Elec. Scripting Prods., Inc. v. HTC Am., Inc.*,
  2021 WL 3773607 (N.D. Cal. Aug. 25, 2021) ...............................................................9, 13, 14

*Fashion Exch. LLC v. Hybrid Promotions, LLC*,
  No. 14 Civ. 1254, 2022 WL 4554480 (S.D.N.Y. Sept. 29, 2022).................................................10

*Fujikura Ltd. v. Finistar Corp.*,
  No. 15 Misc. 80110, 2015 WL 5782351 (N.D. Cal. Oct. 5, 2015)..................................................8

*Gucci Am., Inc. v. Guess?, Inc.*,
  858 F. Supp. 2d 250 (SDNY 2012)...............................................................................................11

*Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*,
  123 F. Supp. 3d 1215 (N.D. Cal. 2015) ....................................................................................8, 13

*Jones v. Raymond Corp.*,
  No. 22 Misc. 80074, 2022 WL 1304025 (N.D. Cal. May 2, 2022) ................................................9

*Juicy Couture, Inc. v. L'Oreal USA, Inc.*,
  No. 04 Civ. 7203, 2006 WL 1359955 (S.D.N.Y. May 18, 2006)............................................11, 12

**Page(s)**

*Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*,
   No. 11 Civ. 3684, 2016 WL 3545529 (D.N.J. June 29, 2016) ...................................... 11, 12

*Nidec Corp. v. Victor Co. of Japan*,
   249 F.R.D. 575 (N.D. Cal. 2007) ........................................................................................ 9

*Oculu, LLC v. Oculus VR, Inc.*,
   No. 15 Civ. 80064, 2015 WL 1926646 (N.D. Cal. April 28, 2015) ................................ 9, 13

*Personal Audio LLC v. Togi Entm't., Inc.*,
   No. 14 Misc. 80025, 2014 WL 1318921 (N.D. Cal. Mar. 31, 2014) .............................. 9, 13

*QS Wholesale, Inc. v. World Marketing, Inc*,
   No. 12 Civ. 451, 2013 WL 1953719 (C.D. Cal. May 9, 2013) .......................................... 12

*Reply All Corp. v. Gimlet Media, Inc.*,
   No. 15 Civ. 4950, 2021 WL 1291103 (E.D.N.Y. Apr. 5, 2021) ......................................... 11

*Rocky Mountain Med. Mgmt., LLC v. LHP Hosp. Grp., Inc.*,
   No. 13 Civ. 64, 2013 WL 6446704 (D. Idaho Dec. 9, 2013) ............................................. 10

*Sanchez v. Am. Media, Inc.*,
   No. 20 Civ. 2924, 2023 WL 4681602 (C.D. Cal. May 8, 2023) ........................................ 14

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*
   , 34 F.3d 1340 (7th Cir. 1994) ........................................................................................... 12

*St. Paul Mercury Ins. Co. v. Homes*,
   No. 15 Civ. 37, 2015 WL 7077450 (E.D. Cal. Nov. 13, 2015) ......................................... 14

*Wag Hotels, Inc. v. Wag Labs, Inc.*,
   No. 20 Civ. 1326, 2023 WL 3605977 (N.D. Cal. May 22, 2023) ..................................... 10

*Waymo LLC v. Uber Techs., Inc.*,
   No. 17 Civ. 939, 2017 WL 3581171 (N.D.Cal. Aug. 18, 2017) ..................................... 8, 10

**Rules**

Fed. R. Civ. P. 26 .................................................................................................................. 8, 13

Fed. R. Civ. P. 30 ......................................................................................................................... 7

Fed. R. Civ. P. 45 ....................................................................................................... 4, 8, 10, 15

TO ALL PARTIES AND COUNSEL OF RECORD:

Please take notice that Beige Key LLC ("Beige Key") will and hereby does move this Court to quash the subpoena MetaX LLC ("MetaX") served on Beige Key ("Beige Key Subpoena") requesting the deposition of a corporate representative of Beige Key.

This motion is brought on the grounds that the deposition is impermissibly burdensome under Federal Rules of Civil Procedure 26 and 45, particularly because Beige Key is not a party to the underlying dispute, the subpoena was issued for an improper purpose, and the information sought by the subpoena is confidential, proprietary information of Beige Key and multiple other non-parties that is not relevant to the underlying litigation and in any event, is equally available from party discovery.

This motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Allison W. Buchner and Scott Minden, exhibits thereto, and such other matters as may be considered at the hearing. The time and date for hearing will be set by the Court once the matter is assigned to a Judge.

## I. INTRODUCTION

MetaX's deposition subpoena to Beige Key, which is a non-party to the underlying litigation, should be quashed for at least the following three reasons:

*First*, in the underlying trademark litigation between Meta Platforms, Inc. ("Meta Platforms") and MetaX pending in the United States District Court for the Southern District of New York,[1] the Honorable Judge Louis Stanton ("Judge Stanton") already denied MetaX's similar requests to compel Meta Platforms, Beige Key's parent company, to produce the information sought by MetaX's subpoena to Beige Key. The Beige Key Subpoena is thus an improper attempt to circumvent Judge Stanton's instructions. Moreover, the scope of what is properly the subject of discovery is best determined by Judge Stanton, who is familiar with the underlying litigation and discovery disputes. This makes particular sense because all of the information sought by the Beige Key Subpoena is equally available from Meta Platforms, a party to the underlying litigation.[2]

*Second*, regardless of MetaX's improper procedural attempt to circumvent Judge Stanton's orders and limits on party discovery, the Beige Key Subpoena should be quashed for the independent reason that the scope of information it seeks is overbroad. The Beige Key Subpoena seeks irrelevant information regarding Beige Key's highly sensitive agreements with multiple other unrelated third parties regarding Beige Key's acquisitions of those third parties' trademark rights. To the extent MetaX argues these agreements are needed for a reasonable royalty analysis, as MetaX argued to Judge Stanton, MetaX is wrong, both factually and legally. As a legal matter, in trademark cases (unlike in patent cases) reasonable royalty damages are disfavored and typically reserved for situations where the parties to the dispute had a prior licensing agreement or negotiations, which is inapplicable here. And as a factual matter, none of the trademark agreements that Beige Key entered (on behalf of Meta Platforms) to acquire unrelated third-party rights that are the subject of the Beige Key Subpoena include any license to or royalty obligation from Meta Platforms. They are thus outside the scope of what is relevant to the reasonable royalty analysis in a trademark case.

---

[1] *METAx LLC v. Meta Platforms, Inc.*, Civil Action No. 1:22-cv-06125-LLS ("SDNY Litigation").

[2] *See also* Decl. of Scott Minden ("Minden Decl.") submitted concurrently herewith.

BEIGE KEY'S MOTION TO QUASH DEPOSITION SUBPOENA  2  CASE NO. 24-MC-80221

*Third*, the Beige Key Subpoena is also overly broad and unduly burdensome because it seeks not just the terms of Beige Key's trademark acquisition agreements with third parties, but also the negotiations of those agreements, sources of funding for the agreements, and a myriad of other topics. This further underscores the irrelevance, overly broad scope, and undue burden of the information sought. Each of Beige Key's trademark acquisition agreements involve different trademark rights. Here, for example, MetaX does not own any trademark registrations for any standalone word mark for "Meta," but rather, has registrations for MetaX's stylized "M META" logo/design mark, and those design mark registrations relate to narrow categories of goods and services focused on event planning and production. There are many reasons why negotiations for one party's trademarks would be treated differently than another, and MetaX's attempt to obtain Beige Key's confidential agreements with multiple other, unrelated third parties would only complicate discovery, requiring individualized "mini-trials" regarding the facts and circumstances surrounding each agreement.

For these reasons and as explained in detail below, Beige Key respectfully requests that this Court quash the Beige Key Subpoena in its entirety and grant a protective order preventing the deposition of Beige Key.

## II. BACKGROUND

### A. The SDNY Litigation

Meta Platforms is a social media technology company that owns and operates Facebook, Instagram, WhatsApp and Threads, amongst others. Meta Platforms offered its brands under the corporate name, Facebook, Inc., until October 2021, when it announced its corporate renaming from Facebook, Inc., to Meta Platforms, Inc., and rebranding to operate as Meta, signifying its commitment to bringing the metaverse to life. Meta Platforms continues to offer its enormously popular social media services and hardware products like Quest and Portal, all now under the umbrella of its Meta brand.

In contrast, MetaX is an event production company that produces live experiences and installations/activations for other companies.[3] MetaX does not own (and has not applied for) a trademark registration for the word "Meta" alone. Indeed, it has never registered any word mark—*i.e.*, a trademark

---

[3] https://meta.is/ (last accessed August 25, 2024).

for the plain letters/word as opposed to a stylized logo or design mark—including for "Meta" as a trademark. Instead, MetaX owns two trademark registrations for a stylized "M Meta" logo (shown below), which are designated for use with very narrow services relating to event planning and production.

◼ META

Despite the two companies' different marks and different businesses, in July 2022, MetaX sued Meta Platforms in the United States District Court for the Southern District of New York, alleging that Meta Platforms' use of its "META" name and mark infringes MetaX's alleged rights in the word "Meta."

Judge Stanton is presiding over the SDNY Litigation. Fact discovery in that case is set to close on October 11, 2024. Meta Platforms has produced tens of thousands of documents in response to MetaX's sweeping requests for production. No party depositions have been scheduled or taken.

**B.     Beige Key LLC and the Beige Key Subpoena**

Beige Key is not a party to the SDNY Litigation. Beige Key is a wholly owned subsidiary of Meta Platforms that was formed in the months leading up to Meta Platforms' rebranding. *See* Minden Decl. ¶ 3. During that time, Meta Platforms acquired many Meta-formative trademarks from third parties and Beige Key was listed as the purchaser/assignor on those acquisition agreements. Beige Key has never had any employees and does not currently conduct any business activities. *Id.* at ¶ 4.

Even though it has not yet taken a single party deposition, on July 25, 2024, MetaX issued a deposition subpoena to Beige Key for a deposition on August 8, 2024. Ex. 1.[4] The parties met and conferred on August 5, 2024, and MetaX agreed to postpone the deposition by two weeks. Ex. 9 at 15 (8/5/24 email from N. Saady). Meta Platforms and Beige Key provided written objections to the deposition subpoena on August 6, 2024. Exs. 2-3. After receiving those written objections (which included objections on the basis that the initial subpoena failed to include a valid place of compliance as required by Fed. R. Civ. P. 45), MetaX issued a new subpoena for a deposition to take place in this district on August 27, 2024. Ex. 4. That subpoena and deposition are the subject of this motion.

The Beige Key Subpoena seeks testimony on ten broad subjects.[5]

---

[4] Exhibits 1-10 referenced herein refer to the exhibits attached to the Declaration of Allison W. Buchner ("Buchner Decl.") filed concurrently herewith.

[5] *See* Ex. 4 at 2-3. MetaX withdrew two of the twelve topics included in its subpoena, both of which related to Beige Key's interactions with MetaX (there are none). Ex. 9 at 8 (8/15/24 Email from N. Saady).

BEIGE KEY'S MOTION TO QUASH DEPOSITION SUBPOENA       4       CASE NO. 24-MC-80221

- Beige Key's corporate relationship to Meta;

- Agreements negotiated and/or entered into between Beige Key and any third party concerning the acquisition, purchase, assignment and/or transfer of any trademark including or containing the word "Meta" that is related to the Industry[6] and/or the goods and services specified in MetaX's two design mark registrations;

- All terms, obligations, rights and/or representations contained in all such agreements (including the consideration, if any, set forth in the agreements and how the amount was determined);

- Negotiations relating to all such agreements;

- The source and amount of all funding for any consideration paid by Beige Key in connection with those agreements;

- Any valuations conducted regarding the trademarks at issue in the agreements covered by the subpoena and the key factors considered in connection with those valuations;

- Records reviewed, information considered, advisors[7] involved in, and business reasons for entering into the agreements covered by the subpoena;

- Any financial evaluation and/or valuation of the term "META" conducted by Beige Key; and

- The value of the term "META," including without limitation the value of the term "META" on or around October 2021.

### C.    MetaX Requested the Same Information from Meta Platforms

Even if the information covered by the Beige Key Subpoena's broad topics was relevant to the claims and defenses in the SDNY Litigation (it is not, see Section III.A *infra*), the same information is equally available from Meta Platforms. Minden Decl. ¶ 5. In the SDNY Litigation, MetaX has requested that Meta Platforms produce the following (all of which directly overlap with the information it now seeks from Beige Key):

- All agreements entered into by Meta Platforms and/or Beige Key and any third party concerning the acquisition, purchase, assignment, and/or transfer of any trademark including or containing the word "Meta;"

- Documents sufficient to show the amount of consideration that Meta Platforms and/or Beige Key paid in connection with such agreements;

---

[6] The Beige Key Subpoena defines "Industry" as "the industry involving goods and services that utilize augmented reality, virtual reality, extended reality, mixed reality, and other similar immersive and experiential technologies" (Ex. 4 at 2), which mirrors the definition that Meta Platforms and MetaX have agreed to use in the SDNY Litigation.

[7] MetaX defined "Advisors" in its subpoena broadly to include "all accountants, consultants, experts, *lawyers*, and advisors," which necessarily seeks ***privileged*** information and communications. *Id*.

- All agreements between Meta Platforms and Beige Key concerning the acquisition, purchase, assignment, and/or transfer of any trademark including or containing the word "Meta;" and

- Documents constituting, evidencing, referring to, or discussing any valuation of any trademark including or containing the word "Meta."

Ex. 5 at 8-9.[8]

In fact, MetaX has twice (unsuccessfully) asked Judge Stanton to compel Meta Platforms to produce the very same third-party trademark acquisition agreements for which it now seeks information from Beige Key. After MetaX's first such request, in March 2023, Judge Stanton denied MetaX's request for relief and vacated several of MetaX's document requests, including RFP No. 5, which sought "documents and communications concerning MPI's acquisition, . . . purchase, . . . assignment, . . . or other transfer of . . . trademark applications and registrations of META-formative marks." Ex. 6.

MetaX then propounded new Requests for Production ("RFPs") seeking much of the same information. Ex. 5 at 8-9. While MetaX's "new" RFPs were narrower in some respects than its initial ones, they still sought broad swaths of irrelevant information about Meta Platforms' transactions with unrelated third parties regarding those third parties' trademark rights, and Meta Platforms objected to the new document requests on that basis (and others). MetaX then asked the Court to compel Meta Platforms to produce the agreements sought by its rewritten requests, arguing—just as MetaX has in connection with its Beige Key Subpoena—that Meta Platforms' trademark acquisition agreements with unrelated third parties are relevant to the analysis of a reasonable royalty in the SDNY Litigation. Ex. 7. MetaX was (again) unsuccessful. Judge Stanton struck MetaX's new requests. Ex. 8 at 21:12-16. Judge Stanton indicated that the Court might revisit the issue later, but only after the evidentiary record in the case is more developed, including via depositions of the individuals who would have been involved in the hypothetical negotiation between MetaX and Meta Platforms and ***asking them how they would have evaluated the terms of a royalty agreement between MetaX and Meta Platforms, had there ever been such an agreement***. *See id.*

---

[8] In fact, MetaX served Requests for Admission on Meta Platforms that cover many of the same topics just last week.

███████████████████████████████████████████████████████████████████

█████████ In other words, the Court indicated that the record to be developed further was that involving asking the Meta Platforms personnel who would have been involved in a hypothetical agreement (with MetaX) what they would have considered in negotiating such an agreement—not deposing Beige Key or any other third party involved in the unrelated agreements about those agreements. Rather than proceeding in accordance with Judge Stanton's instructions, MetaX issued the Beige Key Subpoena, seeking information about the very same third-party agreements that were the subject of the discovery disputes in front of Judge Stanton. And despite including directions to Beige Key regarding how to lodge objections to the Beige Key Subpoena on the face of the subpoena (Ex. 4 at 8), MetaX also took the position that, as a non-party, Beige Key could not object at all to the scope of MetaX's deposition topics, and thus would be required to produce a witness prepared to testify on behalf of Beige Key on the full scope of the topics, as written by MetaX. Ex. 9 at 13-14 (8/9/24 Email from N. Saady).

After the parties met and conferred regarding the Beige Key Subpoena, MetaX offered to depose a representative of Meta Platforms on the topics set forth in the Beige Key Subpoena instead of proceeding with the deposition of Beige Key, but tellingly, and contrary to the process set forth in Fed. R. Civ. P. 30(b)(6), MetaX conditioned that proposal on Meta Platforms agreeing to forego asserting any objections and provide a witness to testify on the topics as written. Ex. 9 at 8 (8/15/24 Email from N. Saady); *id*. at 6 (8/20/24 Email from A. Buchner).[9] When Meta Platforms indicated that it would be willing to prepare a witness to testify on behalf of Meta Platforms on the Beige Key Subpoena topics subject to its objections—and would even allow MetaX to serve an additional 30(b)(6) notice on Meta Platforms later in discovery as it was requesting—MetaX promptly withdrew its offer. *Id.* Meta Platforms' counsel also explained to MetaX's counsel that Beige Key does not possess any records that Meta Platforms would not also possess and offered to provide a sworn declaration to that effect if it would be helpful in resolving the parties' dispute over the Beige Key Subpoena. Ex. 9 at 5 (8/23/24 Email from A. Buchner). MetaX refused that offer as well, insisting that it would proceed with the deposition of non-party Beige Key, and

---

[9] *See also* Fed. R. Civ. P. 30(b)(6) (stating that after a subpoena for deposition is issued to a corporation, the party issuing the subpoena and the subpoenaed organization must confer in good faith about the matters for examination).

that it would ignore Meta Platforms' and Beige Key's objections to that Subpoena, leaving Meta Platforms with no option but to file this motion. Ex. 9 at 3 (8/23/24 Email from K. Arora).

### III. THE BEIGE KEY SUBPOENA SHOULD BE QUASHED

The "subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused." *Fujikura Ltd. v. Finistar Corp.*, No. 15 Misc. 80110, 2015 WL 5782351, at *10 (N.D. Cal. Oct. 5, 2015). Subpoenas issued to non-parties, like Beige Key, are governed by both Rules 45 and 26(b). *See* Fed. R. Civ. P. 26(b)(1); 45; *see also Carroll v. Wells Fargo & Co.*, No. 15 Civ. 2321, 2017 WL 1316548, at *1-2 (ND. Cal. April 10, 2017); Fed. R. Civ. P. 26(b)(1) (non-party subpoena under Rule 45 is subject to the limits on discovery set by Rule 26(b)).

Rule 26 requires that courts limit discovery where "the burden or expense outweighs its likely benefit, considering the needs of the case. . . and the importance of the discovery in resolving the issues." Fed. R. Civ. P. 26(b)(1). In addition to the limits imposed by Rule 26, Rule 45 requires that "on timely motion, the court of the district where compliance is required *must* quash or modify a subpoena that . . . subjects a [party] to an undue burden," which courts assess by "weigh[ing] the burden to the subpoenaed party against the value of the information" to the party issuing the subpoena. Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added); *Angioscore, Inc. v. Trireme Med., Inc.*, No. 12 Civ. 3393, 2014 WL 6706898, at *2 (N.D. Cal. Nov. 25, 2014). Courts may also quash subpoenas that require the disclosure of trade secret or other confidential commercial information. Fed. R. Civ. P. 45(d)(3)(B)(i); *Waymo LLC v. Uber Techs., Inc.*, No. 17 Civ. 939, 2017 WL 3581171, at *1 (N.D. Cal. Aug. 18, 2017).

Courts afford non-parties special protections against the time and expense of complying with subpoenas. *Waymo*, 2017 WL 3581171, at *1 ; *Intermarine, LLC v. Spliethoff Bevrachtingskantoor, B.V.*, 123 F. Supp. 3d 1215, 1217 (N.D. Cal. 2015). Information requested from non-parties "should be narrowly drawn" to meet specific needs for information. *Waymo*, 2017 WL 3581171 at *1. "The party issuing the subpoena must demonstrate that the information sought is relevant and material to the allegations and claims at issue in the proceedings." *Id.*

Courts in this district routinely apply these principles to protect non-parties like Beige Key from burdensome and irrelevant discovery by granting motions to quash, particularly where, as here, the subpoena seeks duplicative information equally available from party discovery. *See, e.g., Jones v.*

*Raymond Corp.*, No. 22 Misc. 80074, 2022 WL 1304025, at *1 (N.D. Cal. May 2, 2022) (granting motion to quash deposition subpoena to non-party where court was "not persuaded of the utility of the information" to the underlying case); *Elec. Scripting Prods., Inc. v. HTC Am., Inc.*, 2021 WL 3773607, at *5 (N.D. Cal. Aug. 25, 2021) (quashing non-party subpoena and granting motion for protective order where information sought was either irrelevant to the action or should have been sought from a party); *Carroll*, 2017 WL 1316548 at *1-3 (quashing non-party subpoena to the extent it included topics for which issuing party had "not met their burden of connecting their attempt to depose [the witness] with a 'claim or defense'" in the underlying litigation); *Audio MPEG, Inc. v. HP Inc.*, No. 16 Misc. 80271, 2017 WL 950847, at *1, 6 (N.D. Cal. March 10, 2017) (quashing non-party subpoenas where information sought was "available from other sources and/or irrelevant"); *Oculu, LLC v. Oculus VR, Inc.*, No. 15 Civ. 80064, 2015 WL 1926646, at *2 (N.D. Cal. April 28, 2015) (granting Meta Platform's motion to quash non-party subpoena where the information sought was irrelevant and/or unreasonably duplicative and should have been sought through party discovery); *Personal Audio LLC v. Togi Entm't., Inc.*, No. 14 Misc. 80025, 2014 WL 1318921, at *2-3 (N.D. Cal. Mar. 31, 2014) (quashing deposition subpoena to non-party where party issuing subpoena failed to show how the information sought was relevant to its claims or that it could not be obtained from party discovery); *Amini Innovation Corp. v. McFerran Home Furnishings, Inc.*, 300 F.R.D. 406, 409 (C.D. Cal. 2014) (granting motion to quash non-party deposition subpoena); *Nidec Corp. v. Victor Co. of Japan*, 249 F.R.D. 575, 577-80 (N.D. Cal. 2007) (same).

The same result is warranted here.

### A.  The Beige Key Subpoena Is An Improper Attempt to Circumvent Party Discovery and Judge Stanton's Orders.

As explained in Section II.C, *supra*, MetaX has already sought the information covered by the Beige Key Subpoena from Meta Platforms, including asking Judge Stanton to compel MetaX to produce the agreements about which it now seeks testimony from Beige Key. Judge Stanton denied MetaX's requests for relief. MetaX's attempt to circumvent Judge Stanton's directives, avoid the proper process for resolving discovery disputes between parties, and position itself to get two bites out of the same apple—by deposing *both* Beige Key and Meta Platforms—is improper and warrants quashing the Beige Key Subpoena.

**B.     The Beige Key Subpoena Should Be Quashed Because It Seeks Beige Key's Highly Sensitive and Irrelevant Trademark Acquisition Agreements with Unrelated Parties**

As the party seeking non-party discovery, MetaX must show that the information it seeks from Beige Key is relevant to the underlying litigation. *Waymo*, 2017 WL 3581171, at *1. The Beige Key Subpoena seeks confidential information not just of Beige Key, but multiple other unrelated parties, which requires MetaX make a "strong showing of need." *Rocky Mountain Med. Mgmt., LLC v. LHP Hosp. Grp., Inc.*, No. 13 Civ. 64, 2013 WL 6446704, at *6, n.4 (D. Idaho Dec. 9, 2013); *see also* Fed. R. Civ. P. 45(d)(3)(B)(i). MetaX cannot demonstrate that the information it seeks is relevant to the SDNY Litigation, much less make a "strong" showing of need. The Beige Key Subpoena should be quashed on that basis alone.

Seven of the Beige Key Subpoena's ten topics seek information regarding Beige Key's confidential agreements with other non-parties in which Beige Key (acting on behalf of Meta Platforms) acquired those unrelated parties' trademark rights. *See* Ex. 4 at 2-3 (Topics 2-8). MetaX argues that these acquisition agreements are relevant to its assessment of damages under a reasonable royalty analysis. MetaX is wrong for at least two reasons:

*First*, as a factual matter, *none* of the agreements sought by the Beige Key Subpoena (or MetaX's parallel requests to Meta Platforms (*see* Section II.C, *supra*)) involve any license to or royalty obligation from Meta Platforms. *Second*, as a legal matter, reasonable royalty damages are disfavored and rarely awarded in trademark cases unless the parties to the dispute had a prior licensing agreement or negotiations, which is inapplicable here. *See, e.g.*, *Wag Hotels, Inc. v. Wag Labs, Inc.*, No. 20 Civ. 1326, 2023 WL 3605977, at *8 (N.D. Cal. May 22, 2023) (granting summary judgment for defendant on issue of reasonable royalties where the parties had no prior licensing history, plaintiff had never entered any royalty-based licensing agreement, and the singular trademark agreement between the parties—a settlement agreement that contained a license—included no royalty provision); *Fashion Exch. LLC v. Hybrid Promotions, LLC*, No. 14 Civ. 1254, 2022 WL 4554480, at *5 (S.D.N.Y. Sept. 29, 2022), *reconsideration denied sub nom.*, 2023 WL 375222 (S.D.N.Y. Jan. 24, 2023) (granting summary judgment for defendant on issue of reasonable royalty damages where there was no evidence parties had any prior trademark licensing relationship); *Reply All Corp. v. Gimlet Media, Inc.*, No. 15 Civ. 4950, 2021 WL

1291103, at *3 (E.D.N.Y. Apr. 5, 2021) (finding plaintiff "had no chance of recovery on a reasonable royalty damages theory" where parties had no previous licensing arrangement and noting plaintiff's "tortured" attempt to concoct a viable damages theory indicated "bad faith and extortionary motives"); *Koninkijke Philips Elecs. N.V. v. Hunt Control Sys., Inc.*, No. 11 Civ. 3684, 2016 WL 3545529, at *29 (D.N.J. June 29, 2016) (reasonable royalty rate damages not available to counterclaim plaintiff where there was no licensing history between parties, nor any evidence counterclaim plaintiff had ever licensed its trademark to anyone); *Gucci Am., Inc. v. Guess?, Inc.*, 858 F. Supp. 2d 250, 253 (SDNY 2012) (recognizing that because reasonable royalty damages "are inherently difficult to calculate in a vacuum, courts often decline to award such damages *unless the parties had a prior licensing agreement"*); *Juicy Couture, Inc. v. L'Oreal USA, Inc.*, No. 04 Civ. 7203, 2006 WL 1359955, at *4 (S.D.N.Y. May 18, 2006) (excluding expert opinions regarding reasonable royalty damages theory where parties had no licensing history and plaintiff had no licensing agreements with any other cosmetics company); *Apollo Theater Found., Inc. v. W. Int'l Syndication*, No. 02 Civ. 10037, 2005 WL 1041141, at *13 (S.D.N.Y. May 5, 2005) (reasonable royalty for past trademark infringement may be appropriate where parties had a history of licensing agreements).

Indeed, in a recent decision from the United States District Court for the Northern District of Illinois, the court found the defendants' request for production of all of the plaintiff's settlement agreements related to the asserted trademarks "unreasonably broad" because the request was not limited to those agreements that contained terms potentially relevant to a royalty calculation, i.e., licensing and royalty terms. *Bigfoot 4x4, Inc. v. Individuals, Corps., Ltd. Liab. Cos., P'ships, and Unincorporated Assocs.*, No. 22 Civ. 6758, 2024 WL 3161626, at *3 (N.D. Ill. June 25, 2024). The court in *Bigfoot* explained that *only licensing or royalty terms* in plaintiff's settlement agreements were potentially relevant to reasonable royalty damages, and thus ordered the plaintiff to produce settlement agreements with other parties to the litigation *only to the extent the agreements contained licensing or royalty provisions* for the trademarks asserted in the litigation. *Id.* And for plaintiff's prior settlement agreements with nonparties, the court deemed it sufficient that the plaintiff had already provided a list of royalty obligations and denied the defendants' motion to compel plaintiff to produce the agreements themselves. *Id.* at 4 (explaining that "[d]efendants' position boils down to speculation that there could be other terms of interest in [p]laintiff's

licensing agreements, but that is not a sufficient basis to compel production of those agreements.") In other words, the *Bigfoot* court made clear that parties in a trademark case are not entitled to discovery of the other side's third-party trademark agreements (even those involving the asserted trademarks) unless those agreements contain royalty obligations. *Id.*

Here, the agreements at issue are even less relevant than those the court in *Bigfoot* found irrelevant because they are the *defendant's* (or defendant's subsidiary's) agreements with third parties, *not the plaintiff's* agreements. *Koninkijke Philips*, 2016 WL 3545529 at *29 (reasonable royalty damages not available where the parties had no prior licensing history and counterclaim plaintiff never licensed its trademark); *Juicy Couture, Inc.*, 2006 WL 1359955 at *4 (excluding expert opinions regarding reasonable royalty damages theory where parties had no licensing history and plaintiff had no licensing agreements).

The amounts Meta Platforms (or Beige Key) paid to unrelated third parties to purchase those third parties' trademarks are not probative of a reasonable royalty valuation as to MetaX's asserted mark. Tellingly, MetaX has never provided a single case decision where a court (much less one from the Second Circuit where its trademark claims are pending against Meta Platforms) considered the amount a *defendant* paid to *acquire* an unrelated third party's mark in determining reasonable royalty damages.[10] None of the agreements sought by the Beige Key Subpoena involve any license to or royalty obligation from Meta Platforms, and thus they are not relevant to the underlying litigation. *Bigfoot*, 2024 WL 3161626, at *3-4. MetaX has not demonstrated (nor could it) that the information regarding Meta Platform's confidential

---

[10] MetaX may argue, as it has in the past, that *Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 34 F.3d 1340 (7th Cir. 1994) and/or *QS Wholesale, Inc. v. World Marketing, Inc*, No. 12 Civ. 451, 2013 WL 1953719 (C.D. Cal. May 9, 2013) somehow support its argument that third-party trademark acquisition agreements are relevant to the reasonable royalty analysis. But in *Sands, Taylor & Wood Co.*, the Seventh Circuit considered the *plaintiff's* prior *licenses* and *license policies, not the defendant's prior licenses*, which had *not been the subject of discovery*. 34 F.3d at 1343-44. And in *QS Wholesale*, the court considered prior negotiations between the named parties in connection with the reasonable royalty analysis. 2013 WL 1953719, at *5. Neither case involved a court looking to trademark purchase agreements, much less agreements between a trademark defendant and unrelated third parties.

Without any legal authority to support its position that Meta Platforms' trademark acquisition agreements with third parties are somehow relevant to the reasonable royalty rate analysis, MetaX also asked Judge Stanton to accept MetaX's hired damages expert's view that the agreements were relevant. Ex. 7 at 2. But MetaX's finance expert's opinion on relevance cannot supplant the court's legal determination of relevance or admissibility, and information that is not relevant, admissible, nor reasonably calculated to lead to such evidence is not discoverable.

trademark acquisition agreements sought by the Beige Key Subpoena is relevant to the underlying litigation. Accordingly, the Beige Key Subpoena should be quashed.[11]

### C. The Beige Key Subpoena Should Be Quashed Because It Seeks Information That Is Equally Obtainable from Party Discovery

Even if MetaX could show that the information sought by the Beige Key Subpoena has some relevance to its claims in the SDNY Litigation (it cannot), MetaX's purported need for that information is outweighed by the burden to Beige Key and thus the Beige Key Subpoena should be quashed on that basis as well. Rule 26 requires a proportionality analysis; that is, weighing the relevance of or the parties' need for particular information against the availability of means of obtaining the discovery and the burden on the subpoenaed party of complying with the subpoena. Fed. R. Civ. P. 26(b). And, as explained above, in assessing burden, courts accord special weight when the discovery sought is from a non-party. *Intermarine,* 123 F. Supp. 3d at 1217.

Courts in this circuit routinely deny non-party discovery where the information sought can be obtained from parties to the underlying litigation. For example, in *Oculu, LLC v. Oculus VR, Inc.*, the court granted Meta Platforms' motion to quash a non-party subpoena where the information sought by the subpoena was equally available from Meta Platforms' subsidiary, which was a party to the underlying litigation. 2015 WL 1926646, at *2, *see also, e.g.*, *Elec. Scripting Prods., Inc.*, 2021 WL 3773607, at *5 (quashing non-party subpoena where, *inter alia*, the information sought should have been more properly sought from a party); *Personal Audio*, 2014 WL 1318921, at *3 (stating "there is no reason to burden non-party . . . when the information sought should be in the possession of the party defendants").

Here, the information sought by the Beige Key Subpoena is indisputably equally available to MetaX through party discovery. *See* Minden Decl. ¶ 5. MetaX conceded as much when it indicated it would withdraw the Beige Key Subpoena and depose a Meta Platforms corporate representative on the same topics instead. Ex. 9 at 8 (8/15/24 Email from N. Saady); *id.* at 6 (8/20/24 Email from A. Buchner). And to be sure, MetaX's discovery requests to Meta Platforms cover the very same information sought by

---

[11] The Beige Key Subpoena's remaining topics (Nos. 1, 9-10) seek information that has already been provided to MetaX or that MetaX has already requested from Meta Platforms and for which Meta Platforms has conducted a reasonable, good faith search and not located any responsive, non-privileged information. *See* Ex. 4 at 2 (Topic 1); Minden Decl. ¶ 3 (describing Meta Platforms' relationship to Beige Key); Ex. 4 at 3 (Topics 9-10); Ex. 10.

the Beige Key Subpoena. *See* Section II.C, *supra*. MetaX may not like Meta Platforms' answers to those requests or wish it could simply ignore Meta Platforms' proper and valid objections, but those are not proper bases to seek duplicative non-party discovery. *Elec. Scripting Prods.*, 2021 WL 3773607, at *4-5 ("To the extent [plaintiff] might complain that it asked for this information from [defendant] but was denied, the correct remedy was a motion to compel, not a campaign to impermissibly saddle a non-party with the unjustified expense and burden of providing discovery that could have been—but was not— secured from a party to the litigation.")

MetaX is attempting to get two bites out of what it well knows is the same apple—by deposing Beige Key now, and Meta Platforms later. On this record, MetaX has no proper basis to enforce the Beige Key Subpoena and it should be quashed.[12]

## IV. CONCLUSION

As explained above, MetaX has no genuine need to obtain the information sought by the Beige Key Subpoena. It is intended to harass Meta Platforms (and its subsidiary) and circumvent limits on party discovery. For the reasons discussed above, Beige Key respectfully requests that the Court grant its motion to quash and issue a protective order to prevent MetaX from seeking irrelevant, confidential, and duplicative discovery from non-party Beige Key.[13]

---

[12] MetaX argued during the parties' meet and confer calls and correspondence that because the **volume** of agreements for which the Beige Key Subpoena seeks information is not extraordinarily great, there is no burden and Beige Key thus must capitulate to MetaX's demands. Not so. The volume of documents is not determinative where, as here, the information sought is not relevant. This is so because requiring a party to produce even a single irrelevant document (particularly one with non-party confidential information) **is burdensome**. *E.g.*, *Sanchez v. Am. Media, Inc.*, No. 20 Civ. 2924, 2023 WL 4681602, at *12 (C.D. Cal. May 8, 2023), *reconsideration denied*, 2023 WL 8168816 (C.D. Cal. Sept. 21, 2023) ("Of course, if the sought-after documents are not relevant . . . then any burden whatsoever imposed would be by definition undue" (internal quotations omitted)); *St. Paul Mercury Ins. Co. v. Homes*, No. 15 Civ. 37, 2015 WL 7077450, at *2 (E.D. Cal. Nov. 13, 2015) (same); *DaVita, Inc. v. Scot Indus., Inc.*, No. 17 Civ. 480, 2018 WL 11443618, at *6-7 (E.D. Tex. Dec. 3, 2018) ("If a subpoena compels disclosure of information that is not properly discoverable, then the burden it imposes, *however slight*, is necessarily undue: why require a party to produce information the requesting party has no right to obtain?"); *AF Holdings, L.L.C. v. Does 1-1058*, 752 F.3d 990, 995 (D.C. Cir. 2014) (same).

Even if that were not so, the Beige Key Subpoena would require Beige Key present a witness prepared to testify on a huge swath of topics relating to a myriad of agreements, each of which relate to multiple different marks acquired from unrelated parties. Preparation for such a deposition, not to mention sitting for a deposition, is burdensome, particularly for a non-party where, as here, a party to the litigation possesses the same information.

[13] To the extent this Court believes that this matter is better decided by the United States District Court for the Southern District of New York, it may exercise its discretion to transfer this motion to that court. Fed. R. Civ. P. 45(f). If this Court is inclined to do so, Beige Key consents to transfer.

|    |    |    |
|----|----|----|
| 1  |    |    |
| 2  | DATED: August 26, 2024 | Respectfully submitted, |
| 3  |    | By: */s/ Allison Buchner* |
| 4  |    | Dale Cendali (SB# 1969070)<br>dale.cendali@kirkland.com |
| 5  |    | KIRKLAND & ELLIS LLP<br>601 Lexington Avenue |
| 6  |    | New York, NY 10022<br>Tel.: (212) 446-4800 |
| 7  |    | Fax: (212) 446-4900 |
| 8  |    | Allison Buchner (SB# 253102)<br>allison.buchner@kirkland.com |
| 9  |    | KIRKLAND & ELLIS LLP<br>2049 Century Park East |
| 10 |    | Los Angeles, CA 90067<br>Tel.: (310) 552-4302 |
| 11 |    | Fax: (213) 680-8500 |
| 12 |    | Lauren J. Schweitzer (SB# 301654)<br>lauren.schweitzer@kirkland.com |
| 13 |    | KIRKLAND & ELLIS LLP<br>555 South Flower Street |
| 14 |    | Los Angeles, CA 90071<br>Tel.: (213) 680-8252 |
| 15 |    | Fax: (213) 680-8500 |
| 16 |    | Rachael A. Rezabek (SB# 298711)<br>rachael.rezabek@kirkland.com |
| 17 |    | KIRKLAND & ELLIS LLP<br>4550 Travis Street |
| 18 |    | Dallas, TX 75205<br>Tel.: (214) 972-1674 |
| 19 |    | Fax: (214) 972-1771 |
| 20 |    | *Attorneys for Defendant and Non-Party Beige Key LLC* |
| 21 |    |    |
| 22 |    |    |
| 23 |    |    |
| 24 |    |    |
| 25 |    |    |
| 26 |    |    |
| 27 |    |    |
| 28 |    |    |

# CERTIFICATE OF SERVICE

I hereby certify that on August 26, 2024, true and correct copies of the foregoing document and all related attachments have been duly served by electronic mail to counsel for METAx.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on August 26, 2024, at Los Angeles, California.

*/s/ Allison Buchner*
Allison Buchner